IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALLEY FORGE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3056 |
| | § | |
| DIPAK SHAH, Individually and | § | |
| as Administrator of the Estate | § | |
| of Pini Shah, Deceased, | § | |
| | § | |
| Defendant and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MRAZ-SIMMONS INSURANCE AGENCY, | § | |
| | § | |
| Third-Party Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Valley Forge Insurance Company's ("Valley Forge") Motion for Summary Judgment (Docket Entry No. 24) and Valley Forge's Supplemental Motion for Summary Judgment (Docket Entry No. 44).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that the motions be **DENIED**.

## I.  Case Background

Valley Forge filed this declaratory judgment action seeking clarification of its duties to Dipak Shah, individually and as administrator of Pini Shah's ("Pini") estate, (collectively "Shah")

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 40.

related to an underlying state lawsuit.  Valley Forge contends that it has no duty to defend or duty to indemnify Shah and seeks a declaration to that effect.

Valley Forge, which is a CNA company, issued a business account package policy to ITOP Investments dba Hearts Discount Beverages[2] for the period November 15, 2002, to November 15, 2003.[3] In general, the policy provided coverage for business liability and property damage and specifically excluded coverage for loss "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto."[4]

By endorsement, the policy reinstated coverage for bodily injury or property damage "arising out of the maintenance or use" of a "hired auto by you or your employees in the course of your business" or a "non-owned auto by any person other than you in the course of your business."[5]   Insured, for purposes of this endorsement only, were:

_____

[2]     Shah points out that the correct name of the insured was Iotop Investments.  Shah's Opposition to Valley Forge's Motion for Summary Judgment and Supplemental Motion for Summary Judgment ("Shah's Opposition"), Docket Entry No. 47, p. 6, n.1.  By way of a subsequent change endorsement, "ITOP Investments Owner of Property, Rosy Red Enterprises, Inc. DBA: Hearts Discount Liquor" was substituted as the named insured.  See Valley Forge's Second Supplement to its Motion for Summary Judgment, Docket Entry No. 49, Ex. A-A, Renewed Business Account Package Policy, policy changes/named insured page.

[3]     Id. at declarations page; see also Valley Forge's Second Supplement to its Motion for Summary Judgment, Docket Entry No. 49, Ex. A, Walker Garrett's affidavit, ¶ 1.

[4]     Id. at Special Property Coverage Form, ¶ A; Businessowners Liability Coverage Form, ¶¶ A, B(1)(g) (internal quotation marks omitted).

[5]     Id. at Hired Auto and Non-owned Auto Liability Endorsement, ¶¶ I, II (internal quotation marks omitted).

2

1.   You.

2.   Any other person using a "hired auto" with your permission.

3.   With respect to an "non-owned auto," any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.

4.   Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs 1., 2. or 3. above.

None of the following is an insured:

. . . .

2.   Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household . . . .[6]

The policy stated that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations."[7]   The endorsement provided definitions for "hired auto" and "non-owned auto" as follows:

"Hired auto" means any "auto" you lease, hire, rent or borrow which is used in connection with your business. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," your partners or your "executive officers," or members of their households, but only while used in your business or your personal affairs.

"Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business.   This includes "autos" owned by your "employees," your partners or your "executive officers,"

_____

[6]      Id. at Hired Auto and Non-owned Auto Liability Endorsement, ¶ IV.

[7]      Id. at Businessowners Liability Coverage Form, introductory paragraph.

3

or members of their households, but only while used in your business or your personal affairs.[8]

In January 2005, Teresa Dunaway ("Dunaway") filed a petition in Texas state court against Shah (in the same capacities as here), alleging negligence that resulted in a very serious automobile accident occurring in February 2003.[9]   According to the original petition, Dunaway was a passenger in a car driven by Pini.[10]   As alleged, Pini took "faulty evasive action," while traveling at an excessive speed, to avoid another vehicle entering the roadway from a private drive.[11]   As a result, the car carrying Pini and Dunaway veered off the road, hitting several poles and flipping.[12]   Dunaway suffered severe bodily injuries.[13]   Pini died.[14]

Dunaway charged Pini with failure to comply with posted speed limits, faulty evasive action, and failure to control the vehicle.[15]   Dunaway alleged that Shah, in his individual capacity, was negligent in entrusting his vehicle to Pini, in failing to train or

---

[8]      Id. at Hired Auto and Non-owned Auto Liability Endorsement, ¶ VIII.

[9]      See Valley Forge's Motion for Summary Judgment, Docket Entry No. 24, Ex. 1, state court original petition.

[10]      Id. at § II.

[11]      Id.

[12]      Id.

[13]      Id. at § IV.

[14]      See Valley Forge's Motion for Summary Judgment, Docket Entry No. 24, p. 2.

[15]      Id. at Ex. 1, state court original petition, § III.

test her properly before allowing her to drive, and in failing to supervise her properly.[16]   The petition stated that Shah was the owner of the automobile driven by Pini, but omitted any reference to the nature of vehicle's use at the time of the accident or any indication that the vehicle was a hired or non-owned automobile.[17]

By way of background only, Shah's automobile insurer accepted coverage for Dunaway's lawsuit and provided Shah with a defense in the underlying suit.[18]   Apparently, the insurer tendered its policy limits to Dunaway, but Dunaway did not immediately accept payment.[19] Dunaway's attorney also contacted Valley Forge in connection with the underlying lawsuit.[20]   On September 2, 2004, CNA notified Dunaway's attorney that it had "accepted coverage."[21]   Dunaway demanded payment in the amount of $1,000,000 from Valley Forge.[22]

---

[16]      Id.

[17]      See id. at §§ I-V.

[18]      The record does not contain evidence clearly establishing this fact. Cf. Valley Forge's Motion for Summary Judgment, Docket Entry No. 24, p. 2; Ex. 3, letter from Dal Fenton to CNA dated May 12, 2005, p. 1.  However, the parties apparently do not dispute this detail, which has no importance in the resolution of the pending motions.

[19]      See id. at Ex. 3, letter from Dal Fenton to CNA dated May 12, 2005, p. 1.  Again, the court is not relying on this detail in deciding the summary judgment motions, but, rather, is providing it only as background information.

[20]      See Shah's Opposition, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton received Oct. 18, 2004, p. 1.  This fact is also not material to the pending motions.

[21]      See id. at pp. 1-2.

[22]      See id. at p. 2; Valley Forge's Motion for Summary Judgment, Docket Entry No. 24, Ex. 3, letter from Dal Fenton to CNA dated May 12, 2005, p. 1.

Valley Forge did not tender payment and, on August 30, 2005, filed this action, denying coverage for Dunaway's claim.  On March 9, 2006, Valley Forge filed the first of the presently pending motions for summary judgment.[23]  Shah failed to respond timely and, in fact, failed to communicate with the court at all prior to the motion submission date.  In April, Valley Forge filed a motion to quash discovery propounded by Shah.[24]  Nearly two months after Valley Forge filed its summary judgment motion, Shah filed a motion for continuance of the summary judgment motion pending discovery.[25] One day later, Dunaway amended her state court petition.[26]

The amended petition identified Shah as "either the owner, operator, partner, officer, director or agent or as the alter-ego of the following Shah family joint business enterprises:  the partnership Iotop Enterprises d/b/a Hearts Discount Beverages, and/or Rosey Red Enterprises, Inc. a Texas corporation d/b/a Hearts Discount Liquors."[27]  Other added or amended statements include:

1) "The vehicle Pini Shah was driving [was] being used by Pini Shah[] in furtherance of a mission for the benefit of Dipak Shah or as agent, servant and employee in the course of her employment with

---

[23]     Docket Entry No. 24.

[24]     Docket Entry No. 27.

[25]     Docket Entry No. 35.

[26]     See Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44, Ex. 4, state court first amended original petition, introductory paragraph, §§ II, III.

[27]     Id. at introductory paragraph.

6

the Dipak Shah family joint business enterprises as set out herein."

2) "The vehicle was either legally or beneficially owned or controlled by Dipak Shah for personal use and/or family joint business enterprises' purposes."

3) "The occurrence made the basis of this suit . . . w[as] proximately caused by the negligent conduct of Dipak Shah . . . by [sic] one or more of the following respects: . . . . E. Properly [sic] hiring or supervising Pini Shah in the course and scope of her employment or in connection with the mission she was on for the Shah family joint business enterprises."[28]

Also in May 2006, the case was reassigned and, then, was referred to the undersigned.[29] At a hearing in June 2006, the court heard arguments on the motion to quash and the motion for continuance.[30] The court granted the former and denied the latter.[31] Shah filed a response to Valley Forge's motion and supplemental motion for summary judgment twenty days after the hearing.[32]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.

---

[28]    Id. at §§ II, III.

[29]    See Docket Entry Nos. 38, 40.

[30]    See Docket Entry No. 46.

[31]    See id.

[32]    Docket Entry No. 47.

7

2003).   The movant must inform the court of the basis for the
summary judgment motion and must point to relevant excerpts from
pleadings, depositions, answers to interrogatories, admissions, or
affidavits that demonstrate the absence of genuine factual issues.
Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125,
1131 (5th Cir. 1992).   If the moving party meets its burden, the
nonmoving party must then go beyond the pleadings and produce
competent evidence that establishes each of the challenged elements
of the case and demonstrates that genuine issues of material fact
do exist to be resolved at trial.   Celotex Corp., 477 U.S. at 324.

### III.  Applicable Law

As this declaratory action is in federal court under diversity
jurisdiction, state law governs substantive matters.   Erie R.R. v.
Tompkins, 304 U.S. 64, 78 (1938).   Because Texas is the forum state
in this matter, the court applies Texas' choice of law rules.
Guar. Nat'l Ins. Co. v. Azrock Indus., 211 F.3d 239, 243 (5th Cir.
2000)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,
496 (1941) and stating that a federal district court sitting in
diversity must apply the forum state's conflict of laws rules).
Any insurance policy payable to a "citizen or inhabitant" of Texas
by an insurance company doing business in Texas is held to be
governed by Texas law regardless of where the contract was executed
or to where the premiums are paid.   Tex. Ins. Code art. 21.42.   By
relying on Texas law in their briefs, the parties have conceded

8

that Texas law applies to the interpretation of Valley Forge's policy.

## A.    Burden of Proof and Contract Interpretation

In general, the insured bears the initial burden of establishing that there is coverage under an applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law and placing burden on insurer to demonstrate that the only reasonable interpretation supports exclusion); Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co., 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied)(stating that the Texas Insurance Code places the burden on the insurer to prove any exception to coverage); see also Tex. Ins. Code Ann. § 554.002 (placing the burden on the insurer to prove the applicability of a coverage exclusion).  If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998)(applying Texas law).

Under Texas law, insurance policies are subject to the rules of contract interpretation.  Azrock Indus., 211 F.3d at 243; Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as

expressed in the written instrument.  <u>Mid-Century Ins. Co. of Tex.</u>
<u>v. Lindsey</u>, 997 S.W.2d 153, 158 (Tex. 1999); <u>Nat'l Union Fire Ins.</u>
<u>Co. of Pittsburgh, Pa. v. CBI Indus.</u>, 907 S.W.2d 517, 520 (Tex.
1995).  To this end, the court reads all provisions within the
contract as a whole and gives effect to each term so that no part
of the agreement is left without meaning.  <u>MCI Telecomms. Corp v.</u>
<u>Tex. Utils. Elec. Co.</u>, 995 S.W.2d 647, 652 (Tex. 1999); <u>see also</u>
<u>Provident Life & Accident Ins. Co. v. Knott</u>, 128 S.W.3d 211, 216
(Tex. 2003).  Terms in contracts are given their plain, ordinary,
and generally accepted meaning unless the contract itself shows
that particular definitions are used to replace that meaning.
<u>Bituminous Cas. Corp. v. Maxey</u>, 110 S.W.3d 203, 208-09 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied).

When a contract as worded can be given "a definite or certain
legal meaning," then it is unambiguous as a matter of law and the
court enforces it as written.  <u>CBI Indus.</u>, 907 S.W.2d at 520.  The
court will not find a contract ambiguous merely because the parties
advance conflicting interpretations.  <u>Kelley-Coppedge, Inc. v.</u>
<u>Highlands Ins. Co.</u>, 980 S.W.2d 462, 465 (Tex. 1998).

**B.    Duty to Defend**

In Texas, an insurer's duty to defend and its duty to
indemnify are two distinct and separate duties.  <u>Trinity Universal</u>
<u>Ins. Co. v. Cowan</u>, 945 S.W.2d 819, 821-22 (Tex. 1997).  Under the
"eight-corners" rule, an insurer's duty to defend its insured

10

arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997).   In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy.   <u>Reyna</u>, 401 F.3d at 350; <u>see also</u> <u>Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d at 141.

"Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ." <u>Liberty Mut. Ins. Co. v. Graham</u>, ___ F.3d ___, 2006 WL 3743108, at *3 (5th Cir. Dec. 21, 2006)(applying Texas law).   The Texas Supreme Court, in dicta, favorably cited a Fifth Circuit Court of Appeals decision in which the federal court predicted that Texas' highest court would recognize an exception to the eight-corners rule only "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."   <u>GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, 197 S.W.3d 305, 308-09 (Tex. 2006)(quoting <u>Northfield Ins. Co. v. Loving Home Care, Inc.</u>, 363 F.3d 523, 531 (5th Cir. 2004)).   Even with its suggestion that a narrow exception may be appropriate in some cases, the Texas Supreme Court strongly

rejected the use of overlapping evidence, noting that to do so would lead to the conflation of the insurer's duty to defend with its duty to indemnify. <u>Fielder Rd. Baptist Church</u>, 197 S.W.3d at 309, 310.

When applying the eight-corners rule, the court considers the factual allegations without regard to their truth or falsity. <u>See</u> <u>id.</u> at 310. Only the facts alleged, not the legal theories asserted, are relevant. <u>Reyna</u>, 401 F.3d at 350. The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. <u>Merchs. Fast</u> <u>Motor Lines, Inc.</u>, 939 S.W.2d at 141. However, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. <u>Id.</u> at 142.

An insurer is required to defend its insured against suit as long as the allegations potentially give rise to at least one claim covered by the insurance policy, regardless of the number of claims potentially not covered. <u>Utica Nat'l Ins. Co. of Tex. v. Am.</u> <u>Indem. Co.</u>, 141 S.W.3d 198, 201 (Tex. 2004)("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."); <u>see also</u> <u>Lafarge Corp. v. Hartford Cas. Ins. Co.</u>, 61 F.3d 389, 393 (5th Cir. 1995), <u>disapproved in part on other grounds by Federated</u> <u>Mut. Ins. Co. v. Grapevine Excavation, Inc.</u>, 241 F.3d 396, 398 n.3 (5th Cir. 2001), (applying Texas law)("Even if the plaintiff's

12

complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage.").

## C.   Duty to Indemnify

The duty to indemnify arises only if the duty to defend first exists. W. Heritage Ins. Co. v. River Entm't, 998 F.2d 311, 315 (5th Cir. 1993 (applying Texas law).  Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend.  St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).  The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying litigation.  Cowan, 945 S.W.2d at 821.  Accordingly, "an insurer may have a duty to defend but, eventually, no duty to indemnify." Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997).

## IV.  Analysis

In its Motion for Summary Judgment, Valley Forge challenged Shah's entitlement to defense and indemnity in the Dunaway case based on the state court petition's omission of any allegation that the automobile was being used in the course of the named insured's business or that it was a qualifying automobile.  Valley Forge's first motion for summary judgment also argued against the application of each of Shah's ten affirmative defenses and its bad

faith allegation.  Upon supplementation, Valley Forge argued that, despite Dunaway's amendment, the petition still failed to allege facts that would bring the claim under the policy's coverage. Valley Forge submitted summary judgment evidence that purports to negate its duty to defend by showing that Shah's wife is an officer of the named insured company and the owner of the vehicle Pini was driving.

Shah's belated response[33] focuses on the eight-corners rule, insisting that the court should disregard Valley Forge's summary judgment evidence[34] because, Shah argues, it is improper for consideration in determining whether Valley Forge has a duty to defend.  Shah also questions who the insured is on the policy.  He argues that the policy is "vague, ambiguous and conflicting as to who the insured under the policy actually is" because the named insured is referenced by different names on several places in the policy.[35]  He also suggests that, because IOTOP Investments is an

---

[33]     The Local Rules state that failure to respond to a motion will be taken as a representation of no opposition. L.R. 7.4. Generally, the non-moving party has twenty days to file a response before the lack of response is considered a lack of opposition.  See L.R. 7.3.  However, because it would be improper to dismiss an action merely because of lack of response, this court must carefully consider the merits of an unanswered (or untimely answered) motion. Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

[34]     Shah also objects to Exhibit 2 (a copy of the insurance policy at issue) of Valley Forge's motion because it was not verified and authenticated. Any procedural error in submitting the policy was corrected by Valley Forge in its Second Supplement to its Motion for Summary Judgment (Docket Entry No. 49).

[35]     Shah's Opposition, Docket Entry No. 47, p. 3.

assumed business name under which he operates, Shah himself is a
named insured.

Before reaching the duty to defend discussion, the court finds
it necessary to first address Shah's concerns about the named
insured on the policy.  Shah compares the named insured listed on
the policy certification page (ITOP Investments Owner of Prop) with
the named insured listed on the original declarations page (ITOP
INVESTMENTS DBA HEARTS DISCOUNT BEVERAGES) with the policy revision
that changed the named insured to ITOP Investments Owner of
Property, Rosy Red Enterprises, Inc. DBA: Hearts Discount Liquor.[36]
Shah's position that these differences make the policy ambiguous is
untenable.  The certification page, as Shah no doubt is well aware,
is not a part of the policy, but serves only to verify that the
attached copy is an accurate copy of the policy at issue.  The
revision page made a change in the named insured on the policy; so,
naturally, it lists a named insured that differs from the one
listed on the original declarations page.  Shah concedes that the
incorrect spelling of Iotop Investments "is clearly a scrivener's
error."[37]

With regard to Shah's implicit request to reform the policy so
that Shah himself is reflected as a named insured, the court will

---

[36]    See Valley Forge's Second Supplement to its Motion for Summary
Judgment, Docket Entry No. 49, Ex. A-A, Renewed Business Account Package Policy,
policy certification page, declarations page, policy changes/named insured page.

[37]    Shah's Opposition, Docket Entry No. 47, p. 6, n.1.

not entertain the idea absent legal authority for doing so.  Shah cites the court to no legal basis for his argument, but, rather, points the court to a document other than the underlying petition and the policy that purports to be an assumed name record.  Even if the court were willing to take that document into consideration, it is far from sufficient to justify reading Shah into the policy as a named insured.[38]

The best way for the court to address the pertinent duty to defend issues is to compare the language of the policy with the live pleading in the underlying action, as required under the eight-corners rule.  The policy provided circumscribed coverage for loss arising out of the use of a hired or non-owned automobile in the course of the named insured's business.[39]  Although somewhat complicated, the relevant endorsement is not ambiguous and can be assigned meaning as a matter of law.  See CBI Indus., 907 S.W.2d at 520.  Other than the course of business requirement, coverage for hired autos and non-owned autos differed.  Because the court finds that coverage is implicated under the endorsement with regard to

---

[38]  Moreover, the policy defines "you" as "the Named Insured *shown in the Declarations*."  Valley Forge's Second Supplement to its Motion for Summary Judgment, Docket Entry No. 49, Ex. A-A, Renewed Business Account Package Policy, Businessowners Liability Coverage Form, introductory paragraph (emphasis added).  Shah is not named as a named insured on the declarations page.  Thus, the word "you" under the "Who is an Insured" section of the Hired Auto and Non-owned Auto Liability Endorsement cannot refer to Shah (without reformation of the policy), regardless of his relationship to the named insured.

[39]  See Valley Forge's Second Supplement to its Motion for Summary Judgment, Docket Entry No. 49, Ex. A-A, Renewed Business Account Package Policy, Hired Auto and Non-owned Auto Liability Endorsement ¶¶ I, II.

hired autos, the court does not reach the non-owned autos coverage issue.  Cf. Am. Indem. Co., 141 S.W.3d at 201 (requiring the insurer to defend a suit if the facts alleged raise even one covered claim).

For hired autos (1) used in the course of the named insured's business, the policy covered liability incurred by (2) the named insured or its employees in using (3) an auto that was leased, hired, rented, or borrowed by the named insured, (4) unless the auto was leased, hired, rented, or borrowed from any of the named insured's employees, partners, executive officers, or members of their households.  The amended petition alleged that Pini was using the automobile "as agent, servant and employee in the course of her employment."[40]  That statement satisfies the first two requirements for coverage:  course-of-business usage and employee usage.  The allegation that Shah (not the named insured) owned the vehicle, in combination with the alleged business use, leads to a reasonable

---

[40]     Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44, Ex. 4, state court first amended original petition, § 2.

inference that the named insured was borrowing it from Shah.[41]  Such
an inference satisfies the third requirement.

The final requirement, that it not be borrowed from the named
insured's employees, partners, executive officers, or members of
their households, is met through artful pleading.  If Shah was an
employee, partner, executive officer, or a member of the same
household as Pini, who is alleged to be an employee, then no
coverage exists.  The petition is silent about living arrangements.
Moreover, Dunaway alleged, in the alternative, that Shah was
"*either* the owner, operator, *partner*, *officer*, director or agent or
. . . alter ego" of the named insured.[42]  Only two of those roles,
partner and officer, clearly would eliminate coverage;[43] that is,

---

[41]     Valley Forge argues that, in order for a vehicle to meet the
definition of "hired auto," there must be "a fairly formal contractual
relationship between the hiring and the insured."  Valley Forge's Supplemental
Motion for Summary Judgment, Docket Entry No. 44, p. 8.  Valley Forge misapplies
the Fifth Circuit law upon which it relies.  In one case cited by Valley Forge,
the Fifth Circuit relied on an earlier decision to distinguish between "hiring
a company that provides transportation and hiring a truck."  Toops v. Gulf Coast
Marine Inc., 72 F.3d 483, 487 (5th Cir. 1996)(citing Sprow v. Hartford Ins. Co.,
594 F.2d 418, 422 (5th Cir. 1979)).  The Toops case did not involve a borrowed
vehicle.  See Toops, 72 F.3d at 487.  The Sprow case, which was decided under
Mississippi law, also did not involve a borrowed vehicle.  Sprow, 594 F.2d at
422.  Rather, it answered the question of whether a contract that created a joint
venture satisfied the policy's definition of a hired auto as one "used under
contract."  Sprow, 594 F.2d at 422.  The Fifth Circuit held that a separate
contract specific to the hiring or leasing was required.  Id. ("[F]or a vehicle
to constitute a hired automobile, there must be a separate contract by which the
vehicle is hired or leased to the named insured for his exclusive use or
control.")  These cases have narrow focuses and simply cannot be read to extend
to borrowed vehicles.

[42]     Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry
No. 44, Ex. 4, state court first amended original petition, introductory
paragraph (emphasis added).

[43]     The court recognizes that owners, operators, directors, and agents
also may be employees, partners, and/or executive officers.  However, the court
cannot make that determination as a matter of law.

if Shah was a partner or officer, the policy would not provide coverage for an automobile borrowed from him.   The alternative pleading thus allows for the possibility of coverage.

In addition to liability coverage, the person sued must meet the endorsement's insured status.   The hired auto provision covered (1) the named insured and (2) any other person using the hired auto with permission, (3) unless the person using the vehicle was a partner or executive officer using an automobile owned by that person or a member of his or her household.   In the underlying action, the named insured was not sued; in fact, the only two defendants are Shah individually and Shah as representative of Pini's estate.   Shah was not using the automobile at the time of the accident, which means that Shah, in his individual capacity, could not be covered under the hired auto endorsement.   However, Pini, if using the vehicle with permission of the named insured, could be covered.   The amended pleading allows for the inference of permissive usage.   Nothing in the amended pleading writes Pini out of insured status by suggesting that she was a partner or executive officer of the named insured.   Hence, under the alleged facts, she falls within the group of persons insured under the policy.   Valley Forge's duty to defend is triggered for Dunaway's claims against Pini's estate.

To combat Dunaway's artful pleading, Valley Forge presents evidence that seriously challenges the truth of the amended

statements.  However, the court is not at liberty to consider such evidence.  Even when the allegations appear to be untrue, the court ordinarily cannot consider extrinsic evidence to defeat an insurer's duty to defend.  See Graham, 2006 WL 3743108, at *3(stating that even facts that are easily ascertained from documents other than the pleading and policy should not be used to determine duty to defend); Fielder Road Baptist Church, 197 S.W.3d at 310 (stating that an allegation's truth is "not a matter for debate in a declaratory judgment action between insurer and insured").

The Texas Supreme Court recently reaffirmed that outside documents which called into question the truth of matters alleged in an underlying pleading cannot be used in determining a duty to defend.  Fielder Rd. Baptist Church, 197 S.W.3d at 310.  In that case, the liability policy at issue covered claims against a church for sexual misconduct of its employees during the policy period. Id. at 307.  The insurer obtained discovery indicating that the accused employee was not employed by the church during the policy period.  Id.  The Texas Supreme Court found that the evidence of the employment dates directly contradicted the plaintiff's allegations and that the coverage issue overlapped with the merits; either of which would be sufficient reason to disallow consideration of extrinsic evidence.  Id. at 308-10.  Similarly, the Fifth Circuit recently refused to allow consideration of

extrinsic evidence to determine whether an employee was covered by his employer's policy as a permissive user of his employer's vehicle because the complaint alleged facts from which an inference of permission could be drawn.  See Graham, ___ F.3d ___, 2006 WL 3743108, at *5.

Based on this recent caselaw, the extrinsic evidence of automobile ownership and business structure cannot be relied upon to contradict the underlying petition in order to extinguish Valley Forge's duty to defend.  Valley Forge has failed to demonstrate, based only on the policy and the underlying pleading, that it has no duty to defend.  As Valley Forge was unsuccessful on the front end in establishing that it has no duty to defend, the court need not consider Valley Forge's arguments contesting Shah's affirmative defenses.  Therefore, its summary judgment motions should be denied.

### V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Valley Forge's motions be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned

shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 1st day of February, 2007.

_____
Nancy K. Johnson
United States Magistrate Judge

22