IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALLEY FORGE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3056 |
| | § | |
| DIPAK SHAH, Individually and | § | |
| as Administrator of the Estate | § | |
| of Pini Shah, Deceased, | § | |
| | § | |
| Defendant and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MRAZ-SIMMONS INSURANCE AGENCY, | § | |
| | § | |
| Third-Party Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Third-Party Defendant Mraz-Simmons Insurance Agency's ("Mraz-Simmons") Motion for Summary Judgment (Docket Entry No. 76) and supplemental motion (Docket Entry No. 87), Plaintiff Valley Forge Insurance Company's ("Valley Forge") Motion for Summary Judgment (Docket Entry No. 77), and Defendant Dipak Shah's ("Shah") Cross-Motion for Summary Judgment (Docket Entry No. 86). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Mraz-Simmons' supplemental motion be **GRANTED** and its initial motion for summary judgment be

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 40.

**DENIED AS MOOT**, Valley Forge's motion be **GRANTED IN PART** and **DENIED IN PART**, and Shah's motion for summary judgment be **DENIED**.

## I.  Case Background

Valley Forge filed this declaratory judgment action seeking clarification of its duties to Shah, individually and as administrator of Pini Shah's ("Pini") estate, related to an underlying state lawsuit.  Valley Forge's position was that it had no duty to defend or duty to indemnify Shah.  Shah counterclaimed and, without providing any factual specificity, sought damages and attorney's fees for unfair settlement practices pursuant to the Texas Insurance Code[2] and attorney's fees under the Texas Declaratory Judgment Act[3] and sought reformation of the policy.[4] Shah also impleaded Mraz-Simmons Insurance Agency ("Mraz-Simmons") on allegations of negligent misrepresentation.[5]

## A.  __Factual and Procedural Background__[6]

Mraz-Simmons was Shah's insurance agent.[7]  Valley Forge, which is a CNA company, issued a business account package policy to "ITOP

---

[2]      Tex. Ins. Code art. 541.060.

[3]      Tex. Civ. Prac. & Rem. Code § 37.009.

[4]      See Shah's Answer, Counterclaims, Third-Party Claims, Docket Entry No. 7, pp. 7-8.

[5]      See id. at pp. 8-9.

[6]      A portion of this section has been lifted verbatim from the court's 2007 Memorandum and Recommendation.  See Docket Entry No. 50, pp. 2-7.

[7]      See Shah's Answer, Counterclaims, Third-Party Claims, Docket Entry No. 7, p. 8.

[sic] INVESTMENTS [("Iotop")][8] DBA HEARTS DISCOUNT BEVERAGES" for the period November 15, 2002, to November 15, 2003.[9]  The parties amended the named insured on the policy to read "ITOP [sic] Investments Owner of Property, Rosy [sic] Red Enterprises, Inc. [("Rosey Red")][10] DBA:  Hearts Discount Liquor."[11]  Iotop, a partnership, was "an assumed name for the property and improvements upon which Rosey Red operated its business."[12]  Shah was an original co-owner of Iotop, but transferred ownership in the partnership to his wife, Tushar Shah ("Tushar") and their children, Pini and Ricky Shah.[13]  Pini was an employee of Rosey Red, and Tushar was president and director of the corporation.[14]

In general, the insurance policy provided Iotop and Rosey Red coverage for business liability and property damage and

---

[8]     The incorrect spelling of Iotop on the insurance policy was merely an error with no legal significance.

[9]     See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. B, Renewed Business Account Package Policy, declarations page (VFIC 0007).

[10]     The misspelling of "Rosey" on the policy is immaterial.

[11]     See id. at policy changes/named insured page (VFIC 0072).  The effective date of this endorsement related back to that of the policy itself.  See id. at business account package policy forms and endorsements page (VFIC 0071); policy changes/named insured page (VFIC 0072).

[12]     Shah's Affidavit, Docket Entry No. 79, p. 4; see also Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. J, Harris County property record.

[13]     Shah's Affidavit, Docket Entry No. 79, p. 4; see also Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, Ex. 6, partnership tax returns.

[14]     See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. F, corporate records, Ex. L, Pini's Wage and Tax Statement.

specifically excluded coverage for loss "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto."[15]  By endorsement, the policy reinstated coverage for bodily injury or property damage "arising out of the maintenance or use" of a "hired auto by you or your employees in the course of your business" or a "non-owned auto by any person other than you in the course of your business."[16]   Insured, for purposes of this endorsement only, were:

1.  You.

2.  Any other person using a "hired auto" with your permission.

3.  With respect to an "non-owned auto," any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.

4.  Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs 1., 2. or 3. above.

None of the following is an insured:

. . . .

2.  Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household . . . .[17]

---

[15]     Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. B, Renewed Business Account Package Policy, Special Property Coverage Form, ¶ A (VFIC 0030-40); Businessowners Liability Coverage Form, ¶¶ A, B(1)(g) (VFIC 0051-52, 0053) (internal quotation marks omitted).

[16]     Id. at Hired Auto and Non-owned Auto Liability Endorsement, ¶¶ I, II (VFIC 0015) (internal quotation marks omitted).

[17]     Id. at ¶ IV (VFIC 0015-16).

The policy stated that "the words 'you' and 'your' referred to the Named Insured shown in the Declarations."[18]   The endorsement provided definitions for "hired auto" and "non-owned auto" as follows:

> "Hired auto" means any "auto" you lease, hire, rent or borrow which is used in connection with your business. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," your partners or your "executive officers," or members of their households, but only while used in your business or your personal affairs.

> "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business.   This includes "autos" owned by your "employees," your partners or your "executive officers," or members of their households, but only while used in your business or your personal affairs.[19]

In February of the policy coverage period, Pini was driving Tushar's automobile on an errand for Rosey Red when she was involved in a fatal accident.[20]  As a result of the accident, Pini died, and the passenger in her car, Teresa Dunaway ("Dunaway"),

---

[18]     Id. at Businessowners Liability Coverage Form, introductory paragraph (VFIC 0051).

[19]     Id. at Hired Auto and Non-owned Auto Liability Endorsement, ¶ VIII (VFIC 0016).

[20]     Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, Ex. 4 (unnumbered), Shah's recorded claims statement, pp. 1, 2, 3, 4 (unnumbered).

suffered severe brain injuries.[21]  At the time, Pini lived at home with her parents, Shah and Tushar.[22]

Dunaway apparently filed claims with Shah's automobile insurer and with Valley Forge.[23]  Shah's automobile insurer accepted coverage for Dunaway's claim.[24]  Although the automobile insurer tendered its policy limits of $50,000 to Dunaway, Dunaway refused to accept it until "the matter [was] complete."[25]  Dunaway also communicated with Valley Forge (CNA) about her third-party insurance claim.[26]  On September 2, 2004, CNA notified Dunaway's attorney that it had "accepted coverage."[27]  A month later, Dunaway

---

[21]    Id. at pp. 2, 3 (unnumbered); see also Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. A, state court original petition, ¶ IV; Shah's Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton stamped "Received" on Oct. 18, 2004, p. 1.

[22]    Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, Ex. 4 (unnumbered), Shah's recorded claims statement, pp. 2-3 (unnumbered).

[23]    Cf. Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 24, Ex. 3, letter from Dal Fenton to Barbara L. Spurgin dated May 12, 2005, p. 1 (referring to the automobile insurance company's tender of policy limits); Shah's Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton stamped "Received" on Oct. 18, 2004, pp. 1-2 (chronicling the history of communication between CNA and Dunaway's attorney).

[24]    See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. D(1), letter from Angela Hodges to Barbara L. Spurgin dated Apr. 4, 2005; letter from Zerika Lee to Shah dated Mar. 24, 2003.

[25]    See Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 24, Ex. 3, letter from Dal Fenton to Barbara L. Spurgin dated May 12, 2005, p. 1.

[26]    See Shah's Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton stamped "Received" on Oct. 18, 2004, pp. 1-2.

[27]    See id.

demanded payment in the amount of $1,000,000 from Valley Forge.[28]
In response to the demand, Valley Forge indicated in a letter to
Dunaway's attorney that it could not pay the claim until it
received the complete medical records concerning the treatment of
Dunaway's injuries.[29]

Almost two years after the accident, in January 2005, Dunaway
filed a petition in Texas state court against Shah (in the same
capacities as here), alleging negligence that resulted in the
automobile accident.[30]   Dunaway charged Pini with failure to comply
with posted speed limits, faulty evasive action, and failure to
control the vehicle.[31]   Dunaway alleged that Shah, in his individual
capacity, was negligent in entrusting his vehicle to Pini, in
failing to train or test her properly before allowing her to drive,
and in failing to supervise her properly.[32]   The petition
(incorrectly) stated that Shah was the owner of the automobile
driven by Pini and omitted any reference to the nature of vehicle's
use at the time of the accident or any other facts suggesting that

---

[28]   See id. at pp. 1, 2.

[29]   See id. at pp. 1-2.

[30]   See Valley Forge's Motion for Summary Judgment with Respect to "Bad
Faith"/Indemnity, Docket Entry No. 77, Ex. A, state court original petition.

[31]   See id. at § III.

[32]   See id.

the vehicle was a hired or non-owned automobile as defined in the policy.[33]

Shah's automobile insurer provided Shah with a defense in the underlying suit.[34] However, Valley Forge neither tendered payment on Dunaway's claim nor provided Shah with a defense, but, rather, on August 30, 2005, filed this action, denying coverage for Dunaway's claim.[35] On March 9, 2006, Valley Forge filed its first motion for summary judgment.[36] After Valley Forge filed the motion, but before Shah filed his untimely response, Dunaway amended her state court petition.[37]

The amended petition identified Shah as "either the owner, operator, partner, officer, director or agent or as the alter-ego of the following Shah family joint business enterprises:  the partnership Iotop Enterprises d/b/a Hearts Discount Beverages,

---

[33]     See id. at §§ I-V.

[34]     See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. D(1), letter from Angela Hodges to Barbara L. Spurgin dated Apr. 4, 2005; letter from Zerika Lee to Shah dated Mar. 24, 2003.

[35]     See Valley Forge's Original Complaint, Docket Entry No. 1.

[36]     See Docket Entry No. 24.

[37]     Compare id. and Shah's Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 47, with Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44, Ex. 4, state court first amended original petition; see also letter from Will G. Dickey to John C. Tollefson dated May 25, 2006.

and/or Rosey Red Enterprises, Inc. a Texas corporation d/b/a Hearts Discount Liquors."[38]  Other added or amended statements include:

(1) "The vehicle Pini Shah was driving [was] being used by Pini Shah[] in furtherance of a mission for the benefit of Dipak Shah or as agent, servant and employee in the course of her employment with the Dipak Shah family joint business enterprises as set out herein."[39]

(2) "The vehicle was either legally or beneficially owned or controlled by Dipak Shah for personal use and/or family joint business enterprises' purposes."[40]

(3) "The occurrence made the basis of this suit . . . w[as] proximately caused by the negligent conduct of Dipak Shah . . . by [sic] one or more of the following respects: . . . . E.  Properly [sic] hiring or supervising Pini Shah in the course and scope of her employment or in connection with the mission she was on for the Shah family joint business enterprises."[41]

Almost immediately after Dunaway filed the amended petition, Shah filed a belated motion for continuance of Valley Forge's summary judgment motion, citing facts alleged in Dunaway's amended petition and requesting discovery.[42]  Valley Forge filed a supplemental motion to address the amended allegations.[43]  After the court denied Shah's request for a continuance, Shah responded to the merits of Valley Forge's motion for the first time, more than

---

[38]   Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44, Ex. 4, state court first amended original petition, introductory paragraph.

[39]   Id. at § II

[40]   Id.

[41]   Id. at § III.

[42]   See Shah's Motion for Continuance, Docket Entry No. 35.

[43]   See Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44.

three and one-half months after it had been filed.[44]  Valley Forge
replied and filed an additional supplement to correct a procedural
error in the submission of evidence.[45]

The court issued a Memorandum and Recommendation on Valley
Forge's summary judgment motions in February 2007.[46]  Based solely
on the artfully pled amended state court petition, the court found
that Valley Forge owed Shah, as administrator of Pini's estate, a
duty to defend the Dunaway lawsuit.[47]  When adopting the Memorandum
and Recommendation, the district court addressed Valley Forge's
duty to defend Shah in his individual capacity and found, based on
the amended state court petition, that it also owed him a defense.[48]
A little more than a month after entering that order, the court
stayed the case pending the resolution of the state action.[49]

In December 2007, Valley Forge sought to reopen the case and
to amend the complaint in order to assert that its policy was
excess to Shah's automobile coverage, under which Shah was being

---

[44]    See Minute Entry dated June 7, 2006, Docket Entry No. 46; Shah's
Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry
No. 47.

[45]    See Valley Forge's (First) Reply, Docket Entry No. 48; Valley Forge's
Second Supplemental Motion for Summary Judgment, Docket Entry No. 49.

[46]    See Mem. & Recommendation dated Feb. 1, 2007, Docket Entry No. 50.

[47]    See id. pp. 16-21.

[48]    See Order Adopting Magistrate Judge's Mem. & Recommendation dated
Mar. 7, 2007, Docket Entry No. 56, pp. 3-5.

[49]    See Order dated Apr. 26, 2007, Docket Entry No. 61.

provided a defense in the Dunaway lawsuit.[50]   The court denied Valley Forge's motion on January 2, 2008.[51]

Nine days later and approximately ten months after the court ordered Valley Forge to enter a defense for Shah in the Dunaway case, Valley Forge's attorney issued a letter to Shah, through his attorney, indicating that it would enter a defense under a reservation of rights.[52]   Valley Forge based its reservation on the assertion that the policy provided no coverage.[53]   Despite its denial of coverage, Valley Forge funded a settlement, in March 2008, that released all of Dunaway's claims against Shah in both capacities.[54]

In June of this year, Shah filed a motion to lift the stay and to compel discovery.[55]   The court held a telephone conference on the motions, granting the former request and denying the latter.[56]   The court determined that a decision on coverage was a necessary first

---

[50]   See Valley Forge's Motion for Leave to Reopen Case and Motion to Amend Complaint, Docket Entry No. 63.

[51]   See Order dated Jan. 2, 2008, Docket Entry No. 67.

[52]   See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. D(2), letter dated Jan. 11, 2008, p. 1.

[53]   See id. at p. 2

[54]   See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. C, Confidential Compromise Settlement Agreement and Release.

[55]   See Shah's Motion to Reopen Stayed Case, Compel Discovery and for Issuance of a New Scheduling Order, Docket Entry No. 69.

[56]   See Minute Entry Order, Docket Entry No. 74.

step in assessing the viability of Shah's claim of bad faith, even though Valley Forge was no longer pursuing its declaratory judgment action on its duty to indemnify.[57]   The court ordered the parties to brief the duty to defend issue, concluding, "So, I'm going to require summary judgments be filed by defendant, presumably, within ten days."[58]   Apparently confused by whether the court intended the defendant in the case (Shah) or the party defending the remaining claim (Valley Forge) to file a motion for summary judgment, neither Shah nor Valley Forge timely complied with the order.[59]   Mraz-Simmons, however, did file a motion for summary judgment within the time frame allotted for the duty to defend issue.[60]   Eventually,

---

[57]   See Transcript of June 20, 2008, hearing, Docket Entry No. 83, pp. 6, 8; Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, p. 2; Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 4.

[58]   Transcript of June 20, 2008, hearing, Docket Entry No. 83, pp. 7, 8, 12.

[59]   See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, pp. 2, 3 (filing a motion for summary judgment about ten days after the court's deadline and stating that, "in an effort to end this matter," Valley Forge was filing its motion due to Shah's failure to comply with the court's order); Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, pp. 1-2 (stating that court staff confirmed that the court intended for Valley Forge to file a motion for summary judgment).   The parties address this issue at length, but the court finds the discussion unnecessary.   The court recognizes that the order confused the parties and accepts both Valley Forge's motion and Shah's cross-motion for review despite the delay in filing.

[60]   See Mraz-Simmons' Motion for Summary Judgment, Docket Entry No. 76.

both Shah and Valley Forge filed motions for summary judgment as well.[61]  The court considers all three motions at this time.

## B.  <u>The Court's Interpretation of the Insurance Policy</u>

In the Memorandum and Recommendation and the subsequent order adopting, the court provided a complete interpretation of the relevant insurance provisions.[62]  A summary is provided here as it is necessary for the determination of Valley Forge's duty to indemnify.

The court begins with the hired automobile liability endorsement.  "For hired autos (1) used in the course of the named insured's business, the policy covered liability incurred by (2) the named insured or its employees in using (3) an auto that was leased, hired, rented, or borrowed by the named insured, (4) unless the auto was leased, hired, rented, or borrowed from any of the named insured's employees, partners, executive officers, or members of their households."[63]  Those individuals and entities insured under this endorsement were: "(1) the named insured and (2) any other person using the hired auto[mobile] with permission, (3) unless the person using the vehicle was a partner or executive

_____

[61]     <u>See</u> Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77; Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 4 (asking the court to consider his opposition as a cross-motion, if the court intended that he file first); Shah's Supplemental Response in Opposition to Valley Forge's Reply and Cross-motion for Summary Judgment, Docket Entry No. 86.

[62]     <u>See generally</u>, Mem. & Recommendation, Docket Entry No. 50; Order Adopting Magistrate Judge's Mem. & Recommendation, Docket Entry No. 56.

[63]     Mem. & Recommendation, Docket Entry No. 50, p. 17.

officer using an automobile owned by that person or a member of his or her household."[64]

The non-owned automobile provision covered different risks. For non-owned automobiles (1) used in the course of the named insured's business, it covered liability incurred by (2) someone other than the named insured using (3) an automobile that was not owned, leased, hired, rented, or borrowed by the named insured, (4) including automobiles owned by employees, partners, executive officers, or members of their households while used in the named insured's business or personal affairs.[65]  The endorsement defined those insured as:  (1) the named insured; (2) any partner or executive officer while the non-owned automobile was being used in the named insured's business; (3) but not with respect to any automobile owned by that partner or officer or a member of his or her household.[66]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.

---

[64]     Id. at p. 19.

[65]     See Order Adopting Magistrate Judge's Mem. & Recommendation, Docket Entry No. 56, pp. 3-4.

[66]     See id. at p. 4.

2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

### III.  Analysis

15

Mraz-Simmons, Valley Forge, and Plaintiff base their motions for summary judgment on very different arguments.  Therefore, the court addresses each individually.

## A.  **Motion by Mraz-Simmons**

Mraz-Simmons originally moved for summary judgment on Shah's third-party claim for negligent misrepresentation based on two arguments:  (1) Shah suffered no harm because Valley Forge paid out the policy limits to settle the claim; and (2) Texas does not allow a claim of misrepresentation under the circumstances of this case. Shah seeks a continuance of the motion in order to pursue discovery from Mraz-Simmons.  In response to the arguments raised in the motion, Shah, for the first time, explained the grounds for his negligent misrepresentation claim:  "Mraz should be held liable for its representation that it would procure insurance in the name of the prior insureds and then failed to do so for both Iotop Investments (Owner of Property) . . . **and** Rosey Red Enterprises, Inc. . . . ."[67]

Based on Shah's clarification, Mraz-Simmons raised lack of standing in its reply and, several weeks later, filed a supplemental motion for summary judgment, raising the standing defense.  Shah did not respond to Mraz-Simmons' supplemental

---

[67]    Shah's Opposition to Mraz-Simmons' Motion for Summary Judgment, Docket Entry No. 78, p. 3.

16

motion.[68]  The court agrees with Mraz-Simmons (despite Mraz-Simmons'
failure to cite any law in support of its argument) that Shah, in
either of the capacities that he appears here, lacks standing to
assert negligent misrepresentation for the failure to obtain an
insurance policy naming Rosey Red as an insured.  Thus, the court
lacks subject matter jurisdiction over Shah's claim against Mraz-
Simmons.

    Federal courts may exercise jurisdiction over cases only as
authorized by the United States Constitution and the jurisdictional
statutes.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375,
377 (1994); <u>see also</u> <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912, 916
(5th Cir. 2001).  A district court has original jurisdiction of "all
civil actions arising under the Constitution, laws, or treaties of
the United States."  28 U.S.C. § 1331.  However, its jurisdiction
over such actions is limited to actual cases or controversies.
<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559 (1992).
"[S]tanding is an essential and unchanging part of the case-or-
controversy requirement . . . ."  <u>Id.</u> at 560; <u>see also</u> <u>McCall v.
Dretke</u>, 390 F.3d 358, 361 (5th Cir. 2004)(explaining that standing
is an essential component of federal subject matter jurisdiction).

---

[68]    The Local Rules for the Southern District of Texas state that
"[f]ailure to respond [to a motion] will be taken as a representation of no
opposition."  L.R. 7.4.  Generally, the non-moving party has twenty days to file
a response before the lack of response is considered a lack of opposition.  <u>See</u>
L.R. 7.3, 7.4.  Opposition or no, the court will not dismiss an action without
carefully considering the movant's arguments in support of dismissal.  <u>See</u>
<u>Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima</u>, 776 F.2d 1277, 1279
(5th Cir. 1985).

As an issue of subject matter jurisdiction, it may be raised at any time by any party or the court.  McCall, 390 F.3d at 361.

In order to have constitutional standing to bring suit, the plaintiff must have sustained an actual injury "fairly traceable to the defendant's actions" and "likely to be redressed by a favorable decision" in court.  Ensley v. Cody Res., Inc., 171 F.3d 315, 319 (5th Cir. 1999); see also Lujan, 504 U.S. at 560-61.  The injury must be "an invasion of a legally protected interest which is [] concrete and particularized," as well as actual or imminent.  Lujan 504 U.S. at 560.

Here, the missing element is an injury traceable to Mraz-Simmons' actions.  Shah has not suffered any injury related to Mraz-Simmons' alleged failure to obtain a policy naming both Iotop and Rosey Red as insureds.  The problem for Shah in this regard is multifaceted.

First, Shah's presence in this lawsuit is as a representative for himself and as representative for Pini's estate, not as a representative for Rosey Red.  Yet, Rosey Red is the party that initially was left off the policy.  Shah has failed to demonstrate how he, in his individual capacity or as representative of Pini's estate, had the authority to bring this action against Mraz-Simmons on behalf of Rosey Red.

Second, Rosey Red was, in fact, a named insured.  Rosey Red was added to the policy sometime after the policy term began, but

the addition explicitly related back to the effective date of the policy.  Therefore, Rosey Red was a named insured as it relates to this cause of action.

Third, even if Rosey Red was not a named insured, it suffered no injury as a result.  The court's interpretation of the policy includes Rosey Red as a named insured.  Ultimately, the court ruled that Valley Forge had a duty to defend Shah, in both capacities, in the underlying state lawsuit.  Moreover, Valley Forge subsequently settled the lawsuit for the policy limits.  Shah received a defense and indemnity, but argues that the damages he suffered related to his attorney's fees for this lawsuit and for his personal attorney's appearance in the underlying state action.  However, those damages, if recoverable, are not traceable to Mraz-Simmons' actions.  They are a product of Valley Forge's decision to sue for declaratory judgment and its alleged failure to make a timely appearance in the state action.

Shah's claim of negligent misrepresentation against Mraz-Simmons should be dismissed.

**B.   Valley Forge's Motion for Summary Judgment**

Valley Forge moved for summary judgment,[69] contending that Shah's statutory claim for unfair settlement practices could not

---

[69]    Valley Forge did not address Shah's reformation claim.  However, the court previously found that Shah's request to reform the policy could not be granted without legal support.  See Mem. & Recommendation dated Feb. 1, 2007, Docket Entry No. 50, pp. 15-16.  Shah has not responded to the implicit invitation in that ruling to provide legal authority.  Therefore, the court assumes Shah has abandoned that claim.

stand because of the absence of the following:  actual damages;
unreasonable delay; coverage; waiver; or any other unreasonableness
on the part of Valley Forge.  As for Shah's request for attorney's
fees under the Texas Declaratory Judgment Act, Valley Forge notes
that the Federal Declaratory Judgment Act, which applies to this
lawsuit, does not provide for the shifting of fees.[70]  Shah
impliedly concedes Valley Forge's second argument,[71] but contends
that Valley Forge waived its coverage defenses by accepting
coverage in October 2004 and by funding the settlement.  Shah also
argues that the actual facts do implicate coverage and seeks
discovery on what Valley Forge knew when it decided against
coverage in favor of filing this lawsuit.

### 1.  Bad Faith Standard

The Texas Insurance Code allows an insured to recover actual
damages, court costs, attorney's fees, and, upon a showing that the
insurer acted knowingly, up to three times actual damages for
unfair settlement practices.  Tex. Ins. Code §§ 541.060; 541.152.
Particularly in relation to this lawsuit, the statute allows
recovery for "failing to attempt in good faith to effectuate a
prompt, fair, and equitable settlement of . . . a claim with

---

[70]     In support of this argument, Valley Forge cites <u>Travelers Indemnity
Co. v. Citgo Petroleum Corp.</u>, 166 F.3d 761, 772 (5th Cir. 1999), and <u>Utica
Lloyd's of Texas v. Mitchell</u>, 138 F.3d 208, 210 (5th Cir. 1998).

[71]     <u>See</u> Shah's Opposition to Valley Forge's Motion for Summary Judgment
with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 20 ("Even if
Shah's reasonable attorney's fees are not recoverable under the Texas Declaratory
Judgment Act, they are recoverable under . . . .").

respect to which the insurer's liability has become reasonably clear."[72]  Tex. Ins. Code § 541.060.

Whether the "insurer breaches its duty of good faith and fair dealing by denying or delaying payment of a claim" is determined by whether "the insurer knew or should have known it was reasonably clear the claim was covered." Tex. Mut. Ins. Co. v. Ruttiger, 265 S.W.3d 651, 661 (Tex. App.–Houston [1st Dist.] 2008, pet. filed)(citing Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 49 (Tex. 1997)); see also United States Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268 (Tex. 1997).  Even if the insurer is wrong in denying a claim, it is not liable for bad faith if it can establish the existence of a bona fide dispute.  Williams, 955 S.W.2d at 268. Thus, "an insurer maintains the right to deny questionable claims without being subject to liability for the erroneous denial of the claim." Ruttiger, 265 S.W.3d at 661.

The existence of a reasonable basis for a denial is to be judged according to the facts before the insurer at the time. Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 202 (5th Cir. 1993); Viles v. Sec. Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990).  Even though the facts before the insurer at the time are key, "post-denial evidence may be relevant because there can be no

---

[72]    A bad faith cause of action lies under Texas common law as well.  As with a statutory claim, common law places a duty on an insurer to deal fairly and in good faith in processing claims.  Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997).  The same analysis is used for statutory and common law bad faith claims.  See Tex. Mut. Ins. Co. v. Ruttiger, 265 S.W.3d 651, 661 n.18 (Tex. App.–Houston [1st Dist.] 2008, pet. filed).

claim for bad faith when an insurer has denied a claim that is, in fact, not covered and the insurer has not otherwise breached the contract." <u>Ruttiger</u>, 265 S.W.3d at 666 (citing <u>Republic Ins. Co. v. Stoker</u>, 903 S.W.2d 338, 340-41 (Tex. 1995)).

Accordingly, as the court previously indicated, the starting point is whether coverage exists.  Although the court previously ruled that Valley Forge had a duty to defend, it must now determine whether that duty had become reasonably clear prior to the court's determination.  The court must also decide if and when a duty to indemnify arose.

### 2.  Duty to Defend

Under the "eight-corners" rule, an insurer's duty to defend its insured arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage.  <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997).  In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy.  <u>Lincoln Gen. Ins. Co. v. Reyna</u>, 401 F.3d 347, 350 (5th Cir. 2005); <u>see also</u> <u>Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d at 141.

When applying the eight-corners rule, the court considers the factual allegations without regard to their truth or falsity.  <u>See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, 197 S.W.3d

305, 310 (Tex. 2006).   Only the facts alleged, not the legal
theories asserted, are relevant.   Reyna, 401 F.3d at 350.   The
court interprets the allegations liberally and resolves all doubts
regarding the duty to defend in favor of the insured.   Merchs. Fast
Motor Lines, Inc., 939 S.W.2d at 141.   However, the court may not
read facts into the pleadings, look outside the pleadings, or
imagine factual scenarios that might trigger coverage.   Id. at 142.

The court's ruling on Valley Forge's duty to defend was based
on the amended petition filed in the state action.   That petition
artfully pled many facts in the alternative, omitted some relevant
information, and contained what are now known to be incorrect
assertions.[73]   The law required the court to find a duty to defend
because the alternative facts could be woven together in such a way
as to implicate coverage.   The court was constrained by the
prohibitions against considering extrinsic evidence and against
reading facts into the pleading.

---

[73]      For example, the amended petition alleged that: (1) Shah was "either
the owner, operator, partner, officer, director or agent or . . . the alter-ego
of the following Shah family joint business enterprises:  the partnership Iotop
Enterprises d/b/a Hearts Discount Beverages, and/or Rosey Red Enterprises, Inc.
a Texas corporation d/b/a Hearts Discount Liquors;" (2) "[t]he vehicle Pini Shah
was driving [was] being used by Pini Shah[] in furtherance of a mission for the
benefit of Dipak Shah or as agent, servant and employee in the course of her
employment with the Dipak Shah family joint business enterprises as set out
herein;" (3) "[t]he vehicle was either legally or beneficially owned or
controlled by Dipak Shah for personal use and/or family joint business
enterprises' purposes;" and (4) "[t]he occurrence made the basis of this suit .
. . w[as] proximately caused by the negligent conduct of Dipak Shah . . . by
[sic] one or more of the following respects: . . . . E.  Properly [sic] hiring
or supervising Pini Shah in the course and scope of her employment or in
connection with the mission she was on for the Shah family joint business
enterprises."  Valley Forge's Supplemental Motion for Summary Judgment, Docket
Entry No. 44, Ex. 4, state court first amended original petition, introductory
paragraph; §§ II, III.  Despite covering quite a number of facts in the
alternative, the petition was completely silent as to Pini's residence.

23

The original state court petition, however, was much more direct in its factual allegations and was silent about any connection between Pini's use of the car and her employment with the insured.[74] More specifically, it contained no reference to any relationship between Pini and/or Shah and the insured; it did not mention the insured at all.[75] Also, Dunaway's original petition did not allege that Pini was on any sort of work-related mission for any employer and did not allege that Shah acted negligently in hiring or supervising Pini in the course of her employment.[76] Dunaway also initially stated that Shah was the owner of the vehicle driven by Pini, rather than the later assertion that he "either legally or beneficially owned or controlled" the automobile "for personal use and/or family joint business enterprises' purposes."[77]

As pled in the original petition, none of the requirements of the hired or non-owned automobile liability endorsement were met. Most importantly, Dunaway did not allege any facts to indicate that the automobile used by Pini was used in the course of the named insured's business and that liability was incurred by the named

---

[74]     See Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 77, Ex. A, state court original petition.

[75]     See id.

[76]     See id.

[77]     Compare id. at ¶ II with Valley Forge's Supplemental Motion for Summary Judgment, Docket Entry No. 44, Ex. 4, state court first amended original petition, ¶ II.

insured or an employee in using an automobile that was leased, hired, rented, or borrowed by the named insured or that liability was incurred by someone other than the named insured using an automobile that was not owned, leased, hired, rented, or borrowed by the named insured.  Absent factual allegations in the original petition that would satisfy these provisions of the endorsement, coverage was not implicated and no duty to defend arose.

By the time Dunaway amended her petition in state court, not only was this suit already pending, but Valley Forge already had filed a motion for summary judgment based on the first petition and was awaiting a ruling from the court.  Shortly after the significant changes in the underlying allegations, Valley Forge supplemented its motion and submitted Dunaway's amended petition. Although the court found that, based on the amended allegations, Valley Forge had a duty to defend Shah, the decision was a close one forged by Dunaway's creative use of pleading in the alternative.  Prior to the court's ruling, the dispute was genuine, and coverage was not reasonably clear.

Accordingly, the court finds that Valley Forge had a reasonable basis to deny Shah a defense until the court's final ruling on the issue.  Cf. Ruttiger, 265 S.W.3d at 661 (discussing the reasonable basis standard).

**3.  Duty to Indemnify**

25

The duty to indemnify arises only if the duty to defend first exists. Am. States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998) ("Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify."). Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend. St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). The duty is triggered only by the actual facts establishing the insured's liability in the underlying litigation. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821 (Tex. 1997). In other words, no duty to indemnify arises unless the underlying suit establishes liability for damages covered by the insuring agreement of the policy. See Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), disapproved of on other grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996); Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 25 (Tex. 1965)(noting that the insurer's duty to indemnify arises because the insured "has been adjudicated to be legally responsible").

Although Valley Forge settled the underlying lawsuit prior to final adjudication, the court is no longer confined to the allegations and can consider the actual facts, such as who owned the automobile and with whom Pini lived. The critical facts are: (1) Tushar owned the automobile that Pini was driving; (2) both Tushar and Pini were partners in Iotop, a named insured; (3) Pini

was an employee of Rosey Red, also a named insured;[78] (4) Tushar was president of Rosey Red; and (5) Pini lived with Tushar and Shah. With these facts established, it is now clear that the policy underwritten by Valley Forge did not provide coverage for Pini's estate or Shah under the circumstances of this case. In analyzing these facts, the court discusses coverage for Pini's estate and Shah in relation to both named insureds, Iotop and Rosey Red.

Coverage for neither Pini's estate nor Shah existed under Iotop's hired automobile endorsement because the automobile that Pini was using[79] belonged to a partner of Iotop. Therefore, the fourth requirement for liability was not met. Additionally, neither Pini's estate nor Shah met the insured status because, although Pini was using the automobile, she was a partner who incurred liability with respect to an automobile owned by a member of her household and Shah was not a named insured on the policy and was not using the automobile.

Coverage also was nonexistent under the non-owned automobile portion of the endorsement because neither Pini's estate nor Shah fit within the insured status. Pini was a partner of Iotop, but was operating[80] an automobile owned by a member of her household

---

[78]    See discussion, supra, at p. 18.

[79]    The court assumes, for purposes of this part of the analysis, that the automobile was leased, hired, rented or borrowed by Iotop.

[80]    The court assumes, for purposes of this part of the analysis, that the automobile was not owned, leased, hired, rented or borrowed by Iotop.

and, thus, was excluded.[81]  Because Shah was no longer a partner of
Iotop and was not a named insured, he also was not insured by the
endorsement.

With regard to Rosey Red as the named insured, Pini's estate
and Shah fare no better.  Under the hired automobile endorsement,
the automobile could not be leased, hired, rented, or borrowed from
any of the named insured's executive officers.  Tushar, the owner
of the automobile, was an executive officer of Rosey Red.  Assuming
the automobile fit within the non-owned status of the other half of
the endorsement, coverage still was not available because neither
Pini nor Shah was a partner or executive officer of Rosey Red, as
required for insured status.

Because the actual facts reveal that the automobile liability
endorsement did not provide coverage for Pini's estate or for Shah,
Valley Forge cannot be held liable, as a matter of law, for
Plaintiff's statutory bad faith claim with regard to indemnity.
Cf. Ruttiger, 265 S.W.3d at 666 (holding that the absence of

---

[81]      Shah quotes a footnote in the Order Adopting Magistrate Judge's
Memorandum and Recommendation that states, "Coverage is provided for damage
caused by an automobile that was owned by a partner or an officer, just not for
the partner or officer who owned the vehicle."  Shah's Supplemental Response in
Opposition to Valley Forge's Reply, Docket Entry No. 86, p. 3 (quoting Order
Adopting Magistrate Judge's Mem. & Recommendation, Docket Entry No. 56, p. 5,
n.9.  In context, the footnote set out to explain that partners' coverage as
outlined in the endorsement was not totally eradicated by the requirements for
insured status.  See id.  The court now clarifies that, not only were partners
not insured with respect to their own vehicles (as stated in the footnote), but
also with respect to automobiles owned by members of their households.  The
automobile Pini drove was owned by her mother, who lived in the same household,
eliminating her from coverage under this portion of the endorsement.

coverage defeats a bad faith claim when the insurer has not otherwise breached the contract).

Shah raises a number of arguments in his combined opposition and cross-motion,[82] some of which are best mentioned in this section in response to Valley Forge's motion and others that are more suited for discussion in connection with Shah's request for summary judgment.   The court addresses here issues related to Shah's contention that facts known to Valley Forge during its investigation are relevant to the court's ruling on bad faith and reveal that coverage became reasonably clear.   For the reasons explained above, the court disagrees with Shah's assessment that the facts establish coverage and does not discuss that topic any further.

Citing Giles, 950 S.W.2d at 56, Shah points out that an insurer's actions after liability has become clear should be judged by the fact-finder.   He argues that Valley Forge's statement in the October 2004 letter to Dunaway's counsel that it had "accepted coverage" demonstrates that Valley Forge's investigation clearly established coverage and, thus, raises a fact issue on the reasonableness of its subsequent decision not to provide coverage. Recognizing that the court may not find the acceptance of coverage to be sufficient to create a question of fact, Shah requests that

---

[82]   The court takes into consideration all of the arguments raised by Shah in his initial response in opposition to Valley Forge's motion and in his supplemental response and cross-motion.

the court allow discovery into Valley Forge's investigation so that
he may explore whether Valley Forge's development of facts and
interpretation of the policy implicated coverage.[83]

In his argument, Shah focuses on the law holding that the
reasonableness of an insurer's denial is to be judged according to
the facts before the insurer at the time.  Although true, that is
only one-half of the legal standard; the other half states that
"there can be no claim for bad faith when an insurer has denied a
claim that is, in fact, not covered and the insurer has not
otherwise breached the contract." Ruttiger, 265 S.W.3d at 666.  In
this case, the contemporaneous results of Valley Forge's
investigation are meaningless because the court has determined that
the duty to defend arose much later in the process and, ultimately,
the claim was not covered.  Because nothing Shah might find out
about Valley Forge's investigation would alter this result, the
court denies Shah's request for discovery.

Shah quotes Stoker, 903 S.W.2d at 341, in which the Texas
Supreme Court explicitly left open the possibility that an insurer
could act in bad faith in legitimately denying a claim *if* the
insurer committed "some act, so extreme, that . . . cause[d] injury

---

[83]    Shah also objects to the record evidence "that has not been
established by sworn testimony, existed, was actually in Valley Forge's
investigation file, and relied upon in denying its duty to defend Shah before it
filed suit." Shah's Opposition to Valley Forge's Motion for Summary Judgment
with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 15.  For the same
reasons the court finds discovery related to the investigation irrelevant in
light of the lack of coverage, the court finds this request for authentication
of evidence unnecessary and **OVERRULES** Shah's objections.

independent of the policy claim."[84]  Shah argues, "Valley Forge's conduct has been extreme[;] it has caused independent injuries such as mental anguish, anxiety and concern over financial ruin, lost wages, and the cost of a defense, the cost to assert its contractual right to a defense, health issues and the like."[85]  The court does not doubt that the events over the last six years have caused Shah much misery and difficulty.  Nevertheless, Shah must point to actions by Valley Forge that were extreme, rather than to the extreme nature of Shah's alleged damages.

Shah's only contention in that regard is "the lack of timeliness" of Valley Forge's investigation, pointing to the six to seven months[86] of investigation that led to Valley Forge's acceptance of coverage and the additional ten months[87] before it

---

[84]    The court notes that the Stoker court did not find that any extreme act had occurred in that instance and did not offer any insight into what might be considered an extreme act justifying a bad faith finding.  See 903 S.W.2d at 341.

[85]    Shah's Opposition to Valley Forge's Motion for Summary Judgment with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 14.

[86]    The court does not know how Shah arrived at this length of time.  The accident occurred in February 2003, and Valley Forge notified Dunaway's attorney that it had accepted coverage in September 2004, a period more than eighteen months.  See Shah's Opposition to Valley Forge's (First) Motion for Summary Judgment, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton stamped "Received" on Oct. 18, 2004.  The letter from Valley Forge to Dunaway's attorney that was sent in October 2004 indicates that Valley Forge was working on the claim at least as early as October 2003.  See id.  The court record contains no additional milestones during the relevant time period that might shed light on Shah's calculation.

[87]    By the court's count, it was closer to a year between the time Valley Forge accepted coverage (September 2, 2004) and when it filed this suit (August 30, 2005).

filed this lawsuit asserting that the policy provided no coverage.[88]
Absent some indication that Valley Forge was intentionally stalling
to cause Shah harm or engaging in some other outrageous conduct,
the court does not find the length of time between the automobile
accident and the inception of this lawsuit to be extreme.   The
court's opinion is supported by the fact that Valley Forge
encountered difficulty acquiring medical information from Dunaway's
attorney[89] and the fact that Dunaway did not file the state action
until January 2005.[90]

**C.   <u>Shah's Cross-Motion for Summary Judgment</u>**

In addition to moving for summary judgment on a factual basis,
Shah argues that Valley Forge waived all of its defenses to
coverage.  Shah, alternatively, seeks leave to amend to add claims
for breach of contract, violations of the Texas Deceptive Trade
Practices and Consumer Protection Act,[91] and additional violations
of the Texas Insurance Code.

Beginning with the waiver contention, the court finds it
unclear whether Shah argues waiver in order to prevent Valley Forge
from seeking reimbursement from Shah or in order to provide a basis

---

[88]    <u>See</u> Shah's Opposition to Valley Forge's Motion for Summary Judgment
with Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 14.

[89]    <u>See</u> Shah's Opposition to Valley Forge's (First) Motion for Summary
Judgment, Docket Entry No. 47, Ex. 2, letter from Chris Warren to Dal Fenton
stamped "Received" on Oct. 18, 2004.

[90]    <u>See</u> Valley Forge's Motion for Summary Judgment with Respect to "Bad
Faith"/Indemnity, Docket Entry No. 77, Ex. A, state court original petition.

[91]    Tex. Bus. & Comm. Code Ann. §§ 17.41-17.63.

for his bad faith claim.  As the parties agree that the duty to indemnify issue is moot except in its relation to Shah's bad faith claim, the court views Shah's position on waiver as addressing only his bad faith claim.  The court understands Shah's argument to be that Valley Forge waived its policy defenses by accepting coverage of the claim in September 2004 and by funding the settlement in 2008.

The law in Texas with regard to waiver of policy defenses has been articulated in many cases over many years.  See Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778-81 (Tex. 2008)(tracing the development of the general rule and an oft-cited exception to the rule).  The general principle is that waiver cannot create insurance coverage where none exists.  Id. at 779, 780.  The exception dates to a 1980 opinion by an intermediate Texas appellate court.  See Farmers Tex. County Mut. Ins. Co. v. Wilkinson, 601 S.W.2d 520, 521-22 (Tex. Civ. App.–Austin 1980, writ ref'd n.r.e.), abrogated by Allied Pilots Ass'n, 262 S.W.3d at 773. In Wilkinson, the court cited the well-established general rule, but stated the following exception:  "[I]f an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating noncoverage, all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them." Wilkinson, 601 S.W.2d at 521-22.

The Texas Supreme Court recently expressed disagreement and abrogated the Wilkinson decision, stating that noncoverage cannot be waived and "thereby effect coverage for a risk not contractually assumed." Allied Pilots Ass'n, 262 S.W.3d at 781. After a thorough discussion of the cases leading up to the Wilkinson decision, the court concluded that the issue of insurer liability for defending an insured without the reservation of rights should turn on whether the insured was prejudiced by the insurer's conflict between defending the insured and developing its own defense to coverage. See Allied Pilots Ass'n, 262 S.W.3d at 786-87. An insured could be prejudiced when an insurer defends without revealing knowledge that coverage might be lacking if the insurer, for example, does not provide an adequate defense or pulls out of the case late in litigation. See id. at 782 (discussing Pac. Indem. Co. v. Acel Delivery Serv., Inc., 485 F.2d 1169, 1175-76 (5th Cir. 1973)). At most, though, an insurer may be required to recompense the insured for prejudice it suffered as a result of the insurer assuming the insured's defense, but not for a risk not covered by the policy:

> In sum, if an insurer defends its insured when no coverage for the risk exists, the insurer's policy is not expanded to cover the risk simply because the insurer assumes control of the lawsuit defense. But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.

Allied Pilots Ass'n, 262 S.W.3d at 783, 786, 787.

34

The situation before this court in no way resembles the scenario that concerned the Texas Supreme Court.  In the first place, although Valley Forge professed its acceptance of coverage for the Dunaway claim, it did not tender a defense at that time. In fact, no state lawsuit was then pending.  Therefore, it was not in a position of conflict with Shah – defending him while formulating a defense to coverage.  In the second place, when Valley Forge did enter a defense for Shah in the state suit, it did so under an expansive reservation of rights.  Thus, Shah was aware of the potential conflict and was in a position to guard against it.  Waiver is simply not applicable.[92]

With regard to amending his counterclaim, Shah makes the following argument:

> Valley Forge's delay in providing a defense to Shah is a breach of contract.  The duty to defend its insured and to perform a timely investigation of an insured's claim are created by statute, common law and Valley Forge's own contract of insurance.  But for the prior stay of this suit and Shah's reliance on the court's prior stay order indicating that it would subsequently issue a new docket control order (that presumably would contain deadlines for amended pleadings and discovery deadlines would be entered [sic] in a new docket control order), Shah would have previously moved to amend its complaint to add these related claims (as well as Shah's Texas Deceptive Trade Practice[s] Act, Prompt Payment of Claim causes of action and his claim for attorney's fees under Article 38 of the Texas Civil Practice and Remedies Code).  At least one of these causes of action has ripened since the stay was

---

[92]    The court also notes that using waiver of defenses to coverage as a method of requiring payment by the insurer is one thing, while implying that the waiver of defenses amounts to bad faith is quite another, one that is not justified under any caselaw, including the expansive <u>Wilkinson</u>.  Shah provides no law on this point.

ordered, i.e., the Prompt Payment claim.  In any event
Shah asks for leave of court to do so now.[93]

Shah contends that leave to amend should be freely given as
mandated by Federal Rule of Civil Procedure ("Rule") 15(a)(2), in
part, because "no docket control order has been entered."[94]

Shah's understanding of the case status is incorrect.  A
docket control order was entered on February 28, 2006, that set
July 5, 2006, as the deadline for amending the pleadings.[95]  When
the case was reassigned to Judge Miller and referred to the
undersigned, all deadlines remained in effect.[96]  The court stayed
the cause on April 26, 2007, more than nine months after the
deadline to amend had expired.[97]  The court will not revive long-
past deadlines in issuing a new post-stay scheduling order.

The significance of Shah's misunderstanding about the
scheduling order relates to the proper standard for allowing leave
to amend.  Rule 16(b), not Rule 15(a)(2), governs amendment of the
pleadings after the expiration a scheduling order deadline.  S & W
Enters., L.L.C. v. SouthTrust Bank of Ala., 315 F.3d 533, 536 (5th
Cir. 2003).  According to Rule 16(b)(4), "[a] schedule may be

---

[93]    Shah's Opposition to Valley Forge's Motion for Summary Judgment with
Respect to "Bad Faith"/Indemnity, Docket Entry No. 81, p. 9; see also id. at pp.
21-22.

[94]    Id. at p. 22.

[95]    See Scheduling Order, Docket Entry No. 23.

[96]    See Notice of Reassignment, Docket Entry No. 38; Order Referring
Case, Docket Entry No. 40.

[97]    See Order dated Apr. 26, 2007, Docket Entry No. 61.

36

modified only for good cause." In deciding whether the amendment is proper, the court needs to consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) [the] potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." S & W Enters., 315 F.3d at 536 (quoting with alterations Reliance Ins. Co. v. La. Land & Exploration Co., 110 F.3d 253, 257 (5th Cir. 1997)). The movant bears the burden of demonstrating that it is entitled to the opportunity to amend. See S & W Enters., 315 F.3d at 536.

Regarding Shah's request to amend to add alternative causes of action for Valley Forge's conduct prior to Shah's original counterclaim, the court finds no good cause. Shah's reason for not filing the motion timely, to wit, the stay, could not have interfered because it occurred nine months after the deadline to amend expired. Moreover, the amendment would be futile, based on the court's current recommendation with regard to coverage.

On the other hand, claims related to Shah's allegation that Valley Forge unreasonably delayed taking up Shah's defense in the underlying action after the court ordered it to do so may not have been obvious before the stay was in place. Amendment to add those claims is significantly important to Shah's case and does not prejudice Valley Forge except in the obvious sense that it would be required to answer the new allegations. The case is languishing

without a scheduling order as it is, and the court can fashion one to suit both parties should new claims be added.

Based on Shah's brief attention to these claims in his summary judgment brief, the court is unable to determine precisely the causes of action that apply and whether the assertion of such claims would be legally futile.  Therefore, the court will allow Shah ten days to file a motion dedicated to his request for leave to amend in which he explains the legal basis for the claims asserted and the damages resulting from the alleged delay in defending the underlying lawsuit.  He must attached a proposed amended complaint to his motion that includes *only* claims related to Valley Forge's failure to provide a defense in the Dunaway lawsuit *after* the court's March 7, 2007, order that confirmed Valley Forge's duty to defend.  Valley Forge will be given ten days to respond to Shah's motion.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Mraz-Simmons' supplemental motion be **GRANTED** and its initial motion for summary judgment be **DENIED AS MOOT**, Valley Forge's motion be **GRANTED IN PART** and **DENIED IN PART**, and Shah's motion for summary judgment be **DENIED**.  Shah's request for leave to amend is **GRANTED IN PART** and **DENIED IN PART**.  The court **ORDERS** Shah to file a motion for leave to amend within ten days of this order, should he wish to pursue that avenue of relief.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.    Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.    Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of January, 2008.


Nancy K. Johnson
United States Magistrate Judge